# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

BSN SPORTS, LLC,

       Plaintiff,

v.                              CASE NO. 8:19-cv-01480-WFJ-TGW

RHANDA HINOTE, CAREN FIORILLO,
KEITHA HALL, REBECCA FAIELLA,
FOOT LOCKER, INC. and EASTBAY, INC.

       Defendants.

_____/

## PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION AND REQUEST FOR EXPEDITED HEARING AND INCORPORATED MEMORANDUM OF LAW

Plaintiff BSN SPORTS, LLC ("BSN" or "Plaintiff"), by and through its undersigned counsel, respectfully moves this Court to enter a preliminary injunction following a hearing in accordance with Rule 65 of the Federal Rules of Civil Procedure and Local Rules 4.05 and 4.06 of the Middle District of Florida. The preliminary injunction will restrain Plaintiff's former employees Rhanda Hinote, Caren Fiorillo, Keitha Hall and Rebecca Faiella (collectively, "Individual Defendants"), and their new employer Foot Locker, Inc. and Eastbay, Inc. (collectively "Foot Locker") (Individual Defendants and Foot Locker, collectively "Defendants") to prevent continued irreparable harm to Plaintiff caused by violations of the Individual Defendants' valid and enforceable restrictive covenant agreements, protect BSN's confidential and proprietary information and trade secrets, and prevent the unlawful

interference with BSN's contractual and business relationships with customers and its former employees.

In support of this motion, BSN relies on and incorporates BSN's Verified Amended Complaint for Injunctive and Other Relief (the "Verified Complaint"), filed June 20, 2019, and Declaration of Jim Bistrow ("Bistrow Decl."), attached as **Ex. A**. BSN requests an evidentiary hearing approximately 75 days from the date of the filing of this Motion, with expedited discovery conducted before the hearing.[1] The parties would be required to exchange exhibits and witness lists ten (10) days before hearing, or as directed by the Court. Following the hearing, BSN requests a reasonable, but expedited, deadline for the parties to submit proposed findings of fact and conclusions of law regarding the entry of a preliminary injunction.

## SUMMARY

BSN seeks to enjoin Defendants and end their unlawful scheme to interfere with and irreparably harm BSN in the school athletic apparel and equipment marketplace. This case arises out of a coordinated scheme by the Individual Defendants to, simultaneously and with no notice, resign their employment with BSN and begin working for competitor Foot Locker, in direct violation of their respective restrictive covenant agreements. Just prior to leaving their employment with BSN, each of the Individual Defendants deleted their email with the apparent purpose to obfuscate their actions and make it difficult for BSN to continue to service the customers assigned to the Individual Defendants. Moreover, at least three of the Individual Defendants—Hinote, Fiorillo, and Hall—connected unauthorized USB devices to their BSN

---

[1] BSN will file a Motion for Expedited Discovery once counsel for Defendants has made an appearance in this case.

computers or retained copies of BSN's confidential and proprietary information.  Foot Locker has knowingly accepted the benefits of the Individual Defendants' wrongful conduct, and has directly facilitated the Individual Defendants' breach of their legal obligations to BSN, causing irreparable harm and significant damages to BSN.

In further support of this Motion, BSN states as follows:

1.      BSN is a leading nationwide marketer, manufacturer, and distributor of sporting goods to universities, secondary schools, and sports leagues.  BSN sells to customers via catalogs, online sales, and direct sales.  (Verified Compl. ¶14.)

2.      Foot Locker, which sells team equipment, uniforms, and shoes, is a direct competitor of Plaintiff. Foot Locker, Inc., Eastbay, Inc., or both entities now employ several former employees of Plaintiff, including the Individual Defendants and a customer service representative they worked with while employed by Plaintiff, Michelle Christmas ("Christmas").  (*Id.* ¶¶29-30.)

3.      BSN and each of the Individual Defendants are party to restrictive covenant agreements that contain enforceable post-employment restrictions regarding non-disclosure, non-competition, and non-solicitation.  (*See* Dkt. 5, Ex. A ("Hinote Agreement"); Dkt. 5, Ex. B ("Fiorillo Agreement"); Dkt. 5, Ex. C ("Hall Agreement"); Dkt. 5, Ex. D ("Faiella Agreement").)

4.      The restrictive covenants contained in the Hinote, Fiorillo, Hall, and Faiella, Agreements are narrowly tailored to protect BSN's legitimate business interests in protecting its confidential and proprietary information, trade secrets, reputation, goodwill, and its market share, and are reasonable in time, geography, and scope.  (*Id.* ¶¶50, 75, 99, 120.)

5.      The Individual Defendants have violated their respective Agreements, and are continuing to violate their Agreements, by working for Foot Locker in the same capacity and territory for which they worked for BSN. (*Id*. ¶61, 85, 106, 126.)

6.      Hinote has further violated the Hinote Agreement, and is continuing to violate her Agreement, by soliciting and conspiring to solicit BSN's customers and clients on behalf of herself and Foot Locker.  (Bistrow Decl. at ¶7.)

7.      Hinote, Fiorillo, and Hall have further violated their respective Agreements, and both Florida and Federal law, and are continuing to violate their Agreements and Florida and Federal law, by misappropriating BSN's confidential and proprietary information and trade secrets.  (*Id*. ¶¶55-57, 60, 80-82, 104.)

8.      BSN is suffering and will continue to suffer irreparable harm to its legitimate business interests, including, but not limited to, loss of customers, loss of business, unauthorized disclosure of its confidential business information, loss of goodwill, and continued damage to its reputation, all while Defendants continue to gain financially.  (*Id*. ¶2.)

9.      Given the irreparable harm that BSN has suffered and is likely to continue to suffer and based on the evidence to date, BSN seeks injunctive relief with respect to Count I of the Verified Complaint (Violation of The Defend Trade Secrets Act); Count II (Violation of the Florida Uniform Trade Secrets Act); Count III (Breach of Contact), Count V (Tortious Interference with CSN's Contractual Relationships), Count VI (Breach of Duty of Loyalty).

For the foregoing reasons, BSN respectfully requests that this Court grant this Motion and enter a Preliminary Injunction containing the following terms:

A.     The Individual Defendants be restrained from further breaching the terms of the restrictive covenants contained in their Agreement, including, but not limiting to, disclosing, using or appropriating any confidential or proprietary information or trade secrets for their own use or for the use of others, directly or indirectly;

B.     The Individual Defendants be restrained from further breaching the terms of the restrictive covenants contained in their Agreement, including, but not limiting to, soliciting BSN current, former, and prospective customers and clients with whom they worked while employed with BSN;

C.     The Individual Defendants be restrained from further breaching the terms of the restrictive covenants contained in their Agreement, including, but not limiting to, working for a competitive business in the same capacity and territory for which they worked for BSN, as described above with respect to each Individual Defendant;

D.     All Defendants be restrained and enjoined from using and/or disclosing BSN's trade secrets, confidential information, and/or proprietary information;

E.     All Defendants be restrained and enjoined from soliciting, or continuing to service, any of BSN's customers/clients with whom the Individual Defendants worked while employed with BSN;

F.     All Defendants be restrained and enjoined from otherwise engaging in conduct that interferes with the business relationships between BSN and its current or prospective customers; and

G.     An award of such other relief that this Honorable Court may deem just and proper.

## SUPPORTING MEMORANDUM OF LAW

BSN is entitled to injunctive relief.   The decision to award injunctive relief is committed to the sound discretion of this Court.  *See Palmer v. Braun*, 287 F.3d 1325, 1329 (11th Cir. 2002); *Merrill, Lynch, Pierce, Fenner & Smith, Inc. v. King*, 804 F. Supp. 1512, 1513 (M.D. Fla. 1992).   A preliminary injunction is appropriate "where the moving party demonstrates (1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered unless the injunction issues; (3) the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) if issued, the injunction would not be adverse to the public interest."  *Four Seasons Hotel & Resorts v. Consorcio Barr, S.A.*, 320 F.3d 1205, 1210 (11th Cir. 2003); L.R. 4.05(b)(4).   As detailed below, BSN can establish each element and, therefore, is entitled to a preliminary injunction.

**A.      BSN Has A Substantial Likelihood of Success on the Merits.**

> **1.      *BSN will likely prevail on the claim for violation of Florida's Uniform Trade Secrets Act.***

BSN will likely succeed on its claim for misappropriation of trade secrets in violation of Florida's Uniform Trade Secrets Act ("FUTSA").   To prove a violation of FUTSA, BSN must establish: (1) that it possessed secret information and took reasonable steps to protect its secrecy, and (2) that the secret it possessed was misappropriated, either by one who knew or had reason to know that the secret was improperly obtained or by one who used improper means to obtain it.  *See* Fla. Stat. §§ 688.001-688.003; *see also Border Collie Rescue, Inc. v. Ryan*, 418 F. Supp. 2d 1330, 1338 (M.D. Fla. 2003).   FUTSA defines a "trade secret" as information that derives economic value from not being generally known and readily

ascertainable and that is the subject of reasonable efforts to protect its secrecy.  *See* Fla. Stat. § 688.002(4).

Here, BSN's protected information includes, but is not limited to, detailed product and service knowledge and development information, customer lists and contact information, marketing plans for potential customers, pricing data and profit margin information, sales strategies and techniques, marketing strategies, operational practices, information on customer needs and preferences, consumer data, and overall product and service expertise.  (*See* Dkt. 5, at ¶17.)  This type of information is a classic example of a company's trade secrets; it derives independent economic value from not being generally known to the public or those that could obtain value from its disclosure or use.

BSN takes substantial protective measures to maintain the secrecy of protected information.  (*Id.* at ¶¶20-22.)  Such steps include, but are not limited to, requiring all appropriate personnel to execute restrictive covenant agreements; ensuring that all business software, applications, and other cloud-based programs require log-in authentication; limiting access based on business need; and requiring the return of any confidential and proprietary information upon separation of employment.  (*Id.*)  Furthermore, employees are required to hold the company's confidential information in the strictest confidence.  (*Id.* at ¶22.)

To date, the evidence shows that at least three of the Individual Defendants misappropriated BSN's protected confidential and proprietary information and trade secrets. For example, in the weeks leading up to her resignation, Hinote emailed from her personal email to her work email several BSN invoices and pictures of orders containing BSN's confidential information and trade secrets, such as pricing information and client data. (*Id.* at

¶55.)  There was no legitimate business reason for Hinote to be conducting work for BSN using her personal email address or to be photographing copies of BSN's documents.  (*Id*. at ¶56.) Prior to resigning her employment, Hinote also connected a USB device to her BSN computers. BSN does not provide USB devices to its employees, and there is no valid business reason for Hinote's use of such a device.  (*Id*. at ¶60.)

Similarly, in the month leading up to her resignation, Fiorillo used her personal email account to send photos she took of purchase orders and customer information, containing BSN's confidential information and trade secrets, such as pricing information.  (*Id*. at ¶80.) Additionally, in late March, Hall also connected a USB device to her BSN computer.  (*Id*. at ¶140.)  Again, BSN does not provide USB devices to its employees, and there is no valid business reason for Hall's use of such a device.

Indeed, demonstrating their bad faith, and in an apparent bid to conceal their actions, in the days leading up to their termination, the Individual Defendants wholesale deleted their email inboxes and sent items.  (*Id*. ¶36.)  A clerical employee who quit to go with the Individual Defendants to work for Foot Locker also deleted all of her work emails, after resigning in concert with the Individual Defendants.  The Individual Defendants' conduct is exactly the type of behavior against which FUTSA was designed to protect, and FUTSA expressly provides for the issuance of an injunction under these circumstances.  *See Autonation, Inc. v. Peters*, No. 16-60010-CIV, 2016 WL 1722365, at *4 (S.D. Fla. Apr. 29, 2016) (injunction proper, as misappropriation claim "does not require proof that [plaintiff] disclosed the secret information he improperly acquired from" prior employer) (citing Fla. Stat. § 688.002(2)).

Accordingly, based on the foregoing, BSN will prevail on the merits of its misappropriation of trade secrets claim.

          **2.**      ***BSN will likely prevail on the claim for violation of the Defend Trade Secrets Act.***

BSN will also succeed on its claim for misappropriation of trade secrets in violation of Defend Trade Secrets Act ("DTSA"). The DTSA forbids threatened and actual misappropriation of trade secrets "if the trade secret is related to a product or service used in, or intended for use in, interstate or foreign commerce." 18 U.S.C. § 1836(b)(1). BSN provides services to clients throughout the state of Florida and nationwide, and ships products across state lines. Thus, BSN's trade secrets are related to services used in interstate commerce. (Verified Compl. ¶¶ 14-15.)

Under the DTSA, "trade secret" means "all forms and types of financial, business, scientific, technical, economic, or engineering information, including patterns, plans, compilations, program devices, formulas, designs, prototypes, methods, techniques, processes, procedures, programs, or codes, whether tangible or intangible, and whether or how stored, compiled, or memorialized physically, electronically…or in writing if, (A) the owner thereof has taken reasonable measures to keep such information secret, and (B) the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information." 18 U.S.C. § 1839(3).

Under the DTSA, "misappropriation" means "(A) acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or (B) disclosure or use of a trade secret of another without express or implied

consent by a person who: (i) used improper means to acquire knowledge of the trade secret; or (ii) at the time of disclosure or use, knew or had reason to know that the knowledge of the trade secret was: (I) derived from or through a person who had used improper means to acquire the trade secret; (II) acquired under circumstances giving rise to a duty to maintain the secrecy of the trade secret or limit the use of the trade secret; or (III) derived from or through a person who owed a duty to the person seeking relief to maintain the secrecy of the trade secret or limit the use of the trade secret; or (iii) before a material change of the position of the person, knew or had reason to know that (I) the trade secret was a trade secret and (II) knowledge of the trade secret had been acquired by accident or mistake." 18 U.S.C. § 1839(5).  "Improper means" includes "theft, bribery, misrepresentation, breach or inducement of breach of a duty to maintain secrecy, or espionage through electronic or other means" 18 U.S.C. § 1839(6).

As explained above, BSN's confidential and proprietary information related to detailed product and service knowledge and development information, customer lists and contact information, marketing plans for potential customers, pricing data and profit margin information, sales strategies and techniques, marketing strategies, operational practices, information on customer needs and preferences, consumer data, and overall product and service expertise constitutes trade secrets. These materials and business information are used in BSN's business and were developed over time after the expenditure of significant effort and resources.  BSN takes reasonable measures to protect the secrecy of such information.

The Individual Defendants knew that they had a duty to maintain the secrecy of BSN's trade secrets due, in part, to their acknowledgment under their Agreements.  Accordingly, based on the foregoing, BSN will prevail on the merits of its DTSA claim.

3.       *BSN will likely prevail on the claims for breach of contract.*

As a threshold matter, the Agreements at issue contain a governing law provision, stating which state's law applies to each Agreement.  The Hinote Agreement and Faiella Agreement state that Texas law applies to the Agreements. The Fiorillo Agreement and Hall Agreement are governed by Florida law.   Through the inclusion of this provision, the Individual Defendants and BSN "have indicated their intention as to the law which is to govern" with respect to claims arising from the Agreement.  *Trublue, Inc. v. Dyn*, 2010 WL 1223895, at *2 (M.D. Fla. 2010) (quoting *Dep't of Motor Vehicles for Use and Benefit of Fifth Ave. Motors, Ltd. v. Mercedes-Benz of N. Am., Inc.*, 408 So. 2d 627, 629 (Fla. 2d DCA 1981)).

### a.       Texas Law Mandates Enforcement of the Hinote and Faiella Agreements

#### i.       Texas Law

Pursuant to Texas' Covenants Not to Compete Act (the "Act"):

> [A] covenant not to compete is enforceable if it is ancillary to or part of an otherwise enforceable agreement at the time the agreement is made to the extent that it contains limitations as to time, geographical area, and scope of activity to be restrained that are reasonable and do not impose a greater restraint than is necessary to protect the goodwill or other business interest of the promisee.

TEX. BUS. & COM. CODE § 15.50(a).

To determine whether a covenant not to compete is "ancillary to or part of an otherwise enforceable agreement," Texas courts engage in a two-step process: (1) whether there is an "otherwise enforceable agreement" (*e.g.*, employee's promise to provide confidential information in exchange for employee's promise not to use or disclose it, contained within the same agreement that includes the non-compete provision); and, if so, (2) whether the covenant not to compete is ancillary to or part of that agreement (e.g., the non-disclosure agreement).

*Marsh*, *USA Inc. v. Cook,* 354 S.W.3d 764, 767 (Tex. 2011).  Importantly, courts should view restrictive covenants agreements with an eye toward enforcement to protect an employer's legitimate business interests. *See*, *e.g*., *Alex Sheshunoff Management Services, L.P. v. Johnson*, 209 S.W.3d 644, 655–57 (Tex. 2006) (holding "at-will employee's non-compete covenant becomes enforceable when the employer performs the promises that it made in exchange for the covenant"—e.g., providing employee with confidential information); *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 852 (Tex. 2009) (upholding covenant based on an implied promise to provide confidential information in the otherwise enforceable agreement).

As indicated above, with respect to whether there is an "otherwise enforceable agreement," the Texas Supreme Court has held that an agreement containing the employer's promise to provide confidential information in exchange for the employee's promise not to disclose that information to the harm of the employer is an otherwise enforceable agreement as a matter of law.[2] *Sheshunoff*, 209 S.W.3d at 651.  Furthermore, an employer's grant of stock options in exchange for an employee's promise that he would not solicit his employer's clients or employees or disclose confidential information constitutes an "otherwise enforceable" agreement.  *Marsh,* 354 S.W.3d at 773.

On the issue of whether the noncompetition covenant is ancillary to or part of an otherwise enforceable agreement (the second inquiry), the Texas Supreme Court has held that

---

[2] Moreover, in *Sheshunoff* and *Mann Frankfort*, the Texas Supreme Court made clear that such an agreement is an otherwise enforceable agreement even if the employer's promise to provide confidential information is illusory and/or implied at the time the agreement is made so long as the employer actually provides access to the confidential information at some point during the employee's employment.  *Id*,; *Mann Frankfort*, 289 S.W.3d at 849.

"[c]onsideration for a noncompete that is reasonably related to an interest worthy of protection, such as trade secrets, confidential information or goodwill, satisfies the statutory nexus." *Marsh USA Inc. v. Cook*, 354 S.W.3d 764, 775 (Tex. 2011).  It is well-settled that where a non-compete arises from an employer's promise, even an implied promise, to provide an employee with confidential or proprietary information and an employee's reciprocal promise not to disclose such confidential information, it "meet[s] the requirement that the covenant be designed to enforce the employee's consideration … provided in the agreement." *Sheshunoff* 209 S.W.3d  at 649 (citing *Light*, 883 S.W.2d at 647).  As the court in *Sheshunoff* noted, the covenant prohibiting the employee from calling on the employer's clients for one year after the termination of his employment was designed to restrict the employee from using the confidential information, to which the employee had gained access, to the detriment of the employer. *Id*.; *accord Mann Frankfort*, 289 S.W.3d 844, 849–50 (agreement enforceable where covenant was designed to hinder the employee's ability to use the information that the employer promised to provide); *Marsh*, 354 S.W.3d at 777 (finding second prong met because "stock options are reasonably related to the protection of … business goodwill").

Upon a showing of a valid agreement, to be enforceable, a restrictive covenant must have reasonable limitations as to time, geographic area, and the scope of activities restricted so they are not broader than necessary to protect the goodwill or other business interest of the employer.  TEX. BUS. & COM. CODE § 15.50. In this case, Plaintiff seeks to enforce the restrictive covenants only to the extent necessary to protect its legitimate business interests as they have developed and exist today.

As to time, Texas courts have routinely found periods of one to two years to be reasonable in noncompetition agreements. *See Sheshunoff*, 209 S.W.3d 644 (covenant prohibited employee from providing consulting services to employer's clients for one year and from selling competing product for two years); *Gallagher Healthcare Ins Srvs. v. Vogelsang*, 312 S.W.3d 640, 647 (Tex. App.—Houston [1st Dist.] pet. filed) (finding a two-year restraint reasonable as a matter of law); *Evan Consoles Inc. v. Hoffman Video Sys., Inc.*, 2001 WL 36238982, **19–21 (N.D. Tex. Dec. 6, 2001) (three years).

Geographically, it is reasonable to restrict the employee from competing in the territory the employee worked during his employment. *Alliantgroup, L.P. v. Feingold*, No. CIVA H-09-0479, 2009 WL 1357209, at *1 (S.D. Tex. May 11, 2009).  Notably, if an agreement's limitations on time, geographic area, or scope of activity are overbroad, a court ***must*** reform them to make the restraints reasonable.  TEX. BUS. & COMM. CODE 15.51(c) ("If the covenant … contains limitations as to time, geographical area, or scope of activity to be restrained that are not reasonable and impose a greater restraint than is necessary to protect the goodwill or other business interest of the promisee, the court ***shall*** reform the covenant to the extent necessary …") (emphasis added); *Alliantgroup,* 2009 WL 1357209, at *1.  Here, Plaintiff has specified the geographic territory it seeks to be enforced by this Court as the specific counties to which each Individual Defendant was assigned, as well as the counties of the other Individual Defendants, constituting a reasonable restriction.

### ii.      The Hinote Agreement is a valid and enforceable contract

Here, the Hinote Agreement is a valid and enforceable agreement with reasonable post-employment restrictions.  First, Hinote agreed to an "otherwise enforceable agreement" that is

ancillary to her promise not to compete against BSN.  In exchange for BSN's promise to provide Hinote with proprietary information, Hinote agreed not to disclose any proprietary information of BSN's except when engaging in business for BSN.  (Dkt. 5 Ex. A ¶2.)  This exchange of promises between BSN (agreeing to provide Hinote with confidential information) and Hinote (agreeing not to disclose that information to the detriment of BSN) constitutes an otherwise enforceable agreement as a matter of law.  *Sheshunoff*, 209 S.W.3d at 649; *Mann Frankfort*, 289 S.W.3d at 852.  And in fact, BSN did provide Hinote with proprietary and confidential information during her employment.  (Verified Compl. ¶110.)  Moreover, in order to restrict Hinote's ability to use this confidential information against BSN, BSN obtained Hinote's promise that she would not compete against BSN and/or solicit its employees, consultants, or customers. (Dkt. 5 Ex. A ¶8.)  In other words, the restrictive covenants limit Hinote's ability to take advantage of, at BSN's expense, the valuable, confidential information she obtained from BSN during her employment.

BSN further agreed to provide Hinote with an award under a Phantom Unit Plan in exchange for her promises in the Hinote Agreement, furthering the Company's business goodwill.  (Dkt. 5 Ex. A.)  This constitutes adequate consideration under Texas law.  *See Marsh,* 354 S.W.3d at 767.

Hinote's restrictions are also reasonable as to time, geography, and scope of activities. First, the 12-month restriction in the Hinote Agreement is plainly reasonable.  *See Stone v. Griffin Communications & Security Sys., Inc.*, 53 S.W.3d 687, 696 (Tex. App. – Tyler 2001) (courts have repeatedly held that restrictions of two to five years a reasonable time restriction) (citations omitted). Second, Plaintiff seeks to enforce the Agreement's restrictions in the

territory in which Hinote ultimately worked during her employment, as well as the territory of the other Individual Defendants to prevent Defendants from unfairly circumventing their individual restrictions.[3]  Moreover, Plaintiff only seeks to prohibit Hinote from soliciting the customers with which she had business dealings during her employment with BSN.  These restrictions are reasonable and enforceable.

Finally, Hinote's restrictive covenants are reasonable with respect to the scope of activities they restrain Hinote from performing, as her non-competition provision is limited to any business that competes with the business conducted by BSN.  (Dkt. 5, Ex. A ¶8.) Therefore, Hinote's noncompetition covenant does not prohibit her from working in a business not in competition with Plaintiff.  Texas courts have enforced covenants with similar or greater activity restrictions.  *See Car Wash Sys. of Tex., Inc. v. Brigance*, 856 S.W.2d 853, 859 (Tex. App.—Fort Worth 1993, no writ) (covenant against service manager engaging in any competitive car wash builder/supplier/repair service in Texas and any other state in which employer is doing business on date of discharge).

### iii.    The Faiella Agreement is a valid and enforceable contract

For the reasons discussed above, the Faiella Agreement is a valid and enforceable agreement with reasonable post-employment restrictions.  As in the Hinote Agreement, the Faiella Agreement contains a promise by BSN to provide confidential information, in exchange

---

[3] In the Hinote Agreement, the parties agreed to a restricted territory consisting of the territory or jurisdictions in which BSN was actively engaged in business, a reasonable restriction in light of Hinote's experience as a manager for BSN and uncertainty as to the scope of Hinote's future activities during the course of her employment.  However, Defendant now seeks to enforce a narrower territory based on the counties that were ultimately serviced by Hinote during her employment.

for Faiella's promise not to disclose such information.  (Dkt. 5, Ex. D ¶1, 2.)  Therefore, the Hinote Agreement constitutes an otherwise enforceable agreement ancillary to the restrictive covenants it contains.  *Sheshunoff*, 209 S.W.3d at 649.

Faiella's Agreement is also reasonable as to time, geographic reach, and scope.  Faiella acknowledged in the Agreement that the "limitations as to time, geographic area and scope of activity set forth herein are reasonable and do not impose a greater restraint than is necessary to protect the goodwill or other business interests of BSN."  (Dkt. 5 Ex. D ¶3.)  Her agreement, like Hinote's, contains a 12-month restriction, which is plainly reasonable.  The geographic scope of her agreement is the state of Florida, which is reasonable as to swim clubs, which she was assigned to throughout the state.  As to other sports teams, Plaintiff seeks to enforce a reasonable restriction encompassing only the geographic areas in Florida that Faiella worked in on behalf of Plaintiff and the counties where other Individual Defendants are restricted from activities under their agreements with Plaintiff.[4]

 Finally, the scope of activities delineated in the Faiella Agreement is reasonably defined as:

> Conduct[ing] or assist[ing] others in conducting any sales related activities for a business that engages in the promotion, marketing, distribution, manufacturing, bidding, sourcing, importing and/or sales of sports or physical education related equipment and/or supplies and uniforms to institutional customers (including, without limitation, schools, government agencies, military facilities, athletic clubs, youth sports leagues, recreational organizations, sporting goods dealers, teams, etc.)

---

[4] In the Faiella Agreement, the parties agreed to a restricted territory consisting of the state of Florida, a reasonable restriction in light of the expectations for Faiella's position and uncertainty as to the scope of Faiella's future activities during the course of her employment. However, Defendant now seeks to enforce a narrower territory based on the counties that were ultimately serviced by Faiella during her employment.

(Dkt. 5, Ex. D ¶III.2.)  Such a provision should be enforced.

### b.   Florida Law Mandates Enforcement of the Fiorillo and Hall Agreements

The Fiorillo and Hall Agreements, which are both governed by Florida law, are substantially similar.  Therefore, they may be analyzed in tandem.  Under Florida law, a restrictive covenant is enforceable if it is supported by a legitimate business interest—which can include trade secrets, confidential information, or specific prospective or existing customer relationships—and the restrictions are reasonably tailored to protect that interest.  Fla. Stat. § 542.335(1)(b) - (c); *Autonation, Inc. v. O'Brien*, 347 F. Supp. 2d 1299, 1304 (S.D. Fla. 2004).  Courts must construe a restrictive covenant "in favor of providing reasonable protection to all legitimate business interests established by the person seeking enforcement." *Id*; (citing Fla. Stat. 542.335(1)(h); *AutoNation, Inc. v. Maki*, 2004 WL 1925479, *3 (Fla.Cir.Ct. Aug. 25, 2004).)  Here, the Fiorillo and Hall Agreements expressly acknowledge the need for the restrictive covenants "for the protection of legitimate business interests of BSN," including confidential and proprietary information, specialized training, goodwill, and contacts developed with BSN's customers and contractors.[5]  (Dkt. 5, Exs. B, C, at 1-2.)

When evaluating the reasonableness of restrictive covenants, Florida courts routinely enforce one- and two-year restrictive covenants like those contained in the Fiorillo and Hall Agreements.  *Winmark Corp. v. Brenoby Sports, Inc*., 32 F. Supp. 3d 1206, 1219-20 (S.D. Fla.

---

[5] In Florida, continued employment is sufficient consideration to support a restrictive covenant agreement.  *Coastal Unilube, Inc. v. Smith*, 598 So. 2d 200, 201 (Fla. Dist. Ct. App. 1992) (continued employment constitutes adequate consideration to support an employment contract).  Both Fiorillo and Hall were employed with BSN for years after their execution of the Agreements.

2014) (enforcing one-year covenant); *Southernmost Foot & Ankle Specialists, P.A. v. Torregrosa*, 891 So. 2d 591, 594-95 (Fla. 3d Dist. Ct. App. 2004), review dismissed, 901 So. 2d 121 (Fla. 2005) (enforcing two-year covenant).

Florida courts also regularly enforce restrictions covering the areas in which the former employer operates.  *See Autonation, Inc. v. Peters*, No. 16-60010-CIV, 2016 WL 1722365, at *1 (S.D. Fla. Apr. 29, 2016) (issuing injunction preventing plaintiff from selling vehicles within 50 miles of the dealership where he had worked or within 10 miles of any dealership owned by his employer); *Estetique Inc. USA v. Xpamed LLC,* No. 0:11-CIV-61740, 2011 WL 4102340, at *10 (S.D. Fla. Sept. 15, 2011) (enjoining defendant from competing in areas in which plaintiff operated, including the United States, Central America (including Mexico), South America, the Caribbean and South America).  *Proudfoot Consulting Co. v. Gordon*, 576 F.3d 1223 (11th Cir. 2009) (injunction preventing former employee from working for a competitor in North America or Europe was proper under Florida law). Here, BSN operates across the state of Florida.   Therefore, the Agreements impose a reasonable geographic restriction.

Finally, the scope of activities is narrowly tailored to the services offered by Fiorillo and Hall during their employment, selling "sports or physical education related equipment and/or supplies and uniforms to institutional customers (including, without limitation, schools, government agencies, military facilities, athletic clubs, youth sports leagues, recreational organizations, sporting goods dealers, teams, etc.)."  (Dkt. 5, Exs. B, C, at 2.)

### c.     The Individual Defendants have breached their Agreements, harming Plaintiff

In going to work for Foot Locker in Florida directly after resigning from BSN, all of the Individual Defendants have breached, and are continuing to breach their noncompetition agreements by perform the same duties they performed for BSN for a direct competitor. Furthermore, Hinote has already begun to solicit BSN's customers for the purpose of selling the same products sold by BSN. (Bistrow Decl. ¶¶6-8.)

BSN has sustained substantial damages as a result of the Individual Defendants' continuing breach. Those damages include, but are not limited to, loss of business and customers, including the relationship with those customers, unauthorized disclosure of its confidential business information, and damage to reputation and goodwill. (Verified Compl. ¶2, 63, 87, 108, 128, 170; Bistrow Decl. at ¶¶4-8.) Therefore, BSN has a substantial likelihood of success on the merits of the breach of contract claims.

### 4.     BSN will likely prevail on the claim for Tortious Interference with BSN's Contractual Relationships.

BSN will also succeed on its claim for Tortious Interference with BSN's Contractual Relationships ("Tortious Interference"). Under Florida law, a claim for tortious interference requires: (1) the existence of a business relationship or contract under which the claimant has rights; (2) the defendant's knowledge of the relationship or contract; (3) an intentional and unjustified interference with the relationship or contract; (4) by a third party; and (5) damage to the claimant cause by the interference. *See Howard v. Murray*, 184 So. 3d 1155, 1166 (Fla. Dist. Ct. App. 2015); *Rudnick v. Sears, Roebuck & Co.*, 358 F. Supp. 2d 1201, 1205 (S.D. Fla. 2005). Defendants were aware of BSN's contracts with each of the Individual Defendants.

With such knowledge and without justification, Foot Locker and each of the Individual Defendants conspired to induce the breaches of the Individual Defendant' contractual, statutory, and common law duties to BSN to advance Defendants' pecuniary interests, causing irreparable harm to BSN.  *Id.* ¶¶178-185.

> **B.** **BSN Will Suffer Irreparable Harm Unless An Injunction Is Issued.**

In considering the four-part analysis for preliminary relief, the first two elements – "substantial likelihood of prevailing" and ""substantial threat of irreparable injury" – frequently must be viewed together and evaluated together:

> The question of irreparable harm often cannot logically be considered apart from the question whether the movant is likely to succeed on the merits.  In many instances, the irreparable injury against which the movant seeks protection results from the infringement of a legal right or interest which will only be established definitely in the proceeding on the merits.

*Treasure Salvors, Inc. v. Unidentified Wrecked & Abandoned Sailing Vessel*, 640 F. 2d 560, 568 (5th Cir. 1981).[6]  Importantly, each of the Individual Defendants acknowledged that if they breached their Agreements, it would cause irreparable harm to BSN, entitling BSN to injunctive relief.  (Dkt. 5, Exs. A-D.)

A "breach of a non-compete agreement that threatens a former employer's goodwill and relationships with its customers [] indicates that nothing short of an injunction would prevent [a] loss" of relationships and goodwill.  *Allied Universal Corp. v. Given*, 223 So. 3d 1040, 1044 (Fla. Dist. Ct. App. 2017) (citing *TransUnion Risk & Alternative Data Sols., Inc.*

---

[6] Decisions of the United States Court of Appeals for the Fifth Circuit, as that court existed on September 30, 1981, handed down by that court prior to close of business on that date, are binding as precedent in the Eleventh Circuit.  *Bonner v. City of Prichard, Ala.*, 661 F.2d 1206 (11th Cir. 1981).

v. Reilly, 181 So.3d 548, 551 (Fla. 4th DCA 2015)); *see U.S. Floral Corp. v. Salazar*, 475 So.2d 1305 (Fla. 3d DCA 1985) (entry of a temporary injunction is the favored remedy for violation of a non-compete agreement).  Moreover, "[i]rreparable harm is presumed when … solicitation of customers occurs."  *Lynch v. Silcox*, No. 01-8800-CIV, 2001 WL 1200656, at *5 (S.D. Fla. Oct. 4, 2001) (citing F.S.A. § 542.33(2)(a)); *see also Autonation, Inc. v. O'Brien*, 347 F. Supp. 2d 1299, 1306 (S.D. Fla. 2004) (in "highly competitive" industry, injunction proper where defendant could implement knowledge of prior employer in position with direct competitor).

Defendants' actions have already caused irreparable harm to BSN in the form of the loss of business, customers, and confidential information, and their actions are likely to continue.  It is clear that BSN is likely to succeed on the merits of its claims.  In the absence of appropriate injunctive relief, Defendants will continue their illegal acts and unfair competition, which will continue to have a detrimental impact on BSN's business. Under the facts and applicable law, these actions would result in immediate and irreparable harm.

### C.     The Threatened Injury to BSN Outweighs Whatever Damage the Proposed Injunction May Cause the Defendants.

Preliminary injunctive relief is warranted in this case because, at a minimum, sufficiently serious questions as to Defendants' actions exist and the balance of hardships tip clearly in BSN's favor.  The harm faced by BSN outweighs any harm Defendants could claim that they would suffer if they are not allowed to use or disclose BSN's confidential information and trade secrets or continue to solicit customers using the misappropriated information. Notably, "the Florida Legislature has expressly recognized that violations of restrictive covenants cannot adequately be remedied by money damages alone and may therefore be

enforced through injunctive relief." *Autonation, Inc. v. O'Brien*, 347 F. Supp. 2d 1299, 1308 (S.D. Fla. 2004) (citing Fla. Stat. § 542.335). Moreover, the statute specifically prohibits the consideration of "any individualized economic or other hardship that might be caused to the person against whom enforcement is sought." Fla. Stat. § 542.335 (1)(g)(1).

In a similar case, *North American Products Corp. v. Moore*, 196 F. Supp. 2d 1217, 1231 (M.D. Fla. 2002), the court found that the balance of harm favored a preliminary injunction against a former sales representative who resigned to a run a business that competed with his former employer. The former sales representative's solicitation of the employer's customers interfered with the employer's relationships with customers and had a high possibility of damaging the employer's reputation and goodwill, whereas the harm to the employee was insignificant, in that he would only be prohibited from soliciting his prior customers from the employer's business. *Id.*

Here, BSN faces substantial losses in the marketplace as well as the loss of irreplaceable trade secrets and confidential information and irreparable loss of client relationships and customer goodwill. Defendants, on the other hand, will not suffer any harm by complying with the terms of the Agreement the Individual Defendants voluntarily entered into and otherwise complying with state and federal law. They would merely abide by the status quo. Thus, the balance of the equities requires the issuance of injunctive relief to BSN.

### D. Injunctive Relief Will Promote The Public Interest.

Finally, in order to issue a preliminary injunction, the Court must look to whether granting a preliminary injunction "will disserve the public interest." *International Hair & Beauty Systems, LLC*, 2011 WL 5359264 at *8. In this case, a preliminary injunction would

absolutely serve the public interest, i.e., upholding the terms of enforceable contracts and protecting confidential information and trade secrets. *See*, *e.g.*, *Medai, Inc. v. Quantros, Inc*., Case No. 6:12-cv-840-ORL-37, 2012 WL 3542412 at *7 (M.D. Fla. Aug. 16, 2012) (citing *Ryan,* 2012 WL 1532492 at *9) ("The public has an interest in protecting and enforcing valid contracts."). "As Florida has recognized by the enactment of Florida Statutes Section 542.335, there is an especially strong public interest in protecting confidential information and enforcing restrictive covenants, as that promotes legitimate business interests." *Id.,* at *7 (citing *Autonation, Inc. v. O'Brien*, 347 F. Supp.2d 1299, 1308 (S.D. Fla. 2004).

As such, enjoining Defendants would promote the public interest, because bad actors, such as Defendants, should not be allowed to profit from their wrongdoing. Companies should be confident that the law protects their legitimate business interests, including their client relationships and confidential business information and trade secrets, which are developed over years of substantial time, effort, and expense. Indeed, "[t]he public has an interest in protecting businesses from theft of confidential information, and remedies at law are insufficient because of the time sensitive nature of confidential information and the possible advantage it could engender." *Hatfield v. AutoNation,* Inc., 939 So. 2d 155, 158 (Fla. 4th DCA 2006). Therefore, a preliminary injunction would serve the public interest and should be granted here.

### E.     Bond Requirement.

Once a court determines that a preliminary injunction should issue, Federal Rule of Civil Procedure 65(c) requires consideration of an appropriate bond. "Rule 65(c) of the Federal Rules of Civil Procedure requires the injunction applicant to post security 'sufficient for payment of costs and damages as may be incurred or suffered by the party determined to have

been enjoined wrongfully.'" *Exch. Int'l, Inc. v. Vacation Ownership Relief, LLC*, 2010 WL 4983668 (M.D. Fla. 2010) (citing *Weaver v. Sch. Bd. of Leon County*, 2006 WL 858510 *2, n. 3 (11th Cir. 2006). "Notwithstanding the seemingly mandatory language of [Rule 65(c)]," a district court "has the discretion to issue a preliminary injunction without requiring Plaintiffs to give security." *Tancogne v. Tomjai Enterprises Corp.*, 408 F. Supp. 2d 1237, 1252 (S.D. Fla. 2005). "Whether or not to require a bond in any particular case—and the amount of any such bond demanded—is within the discretion of the trial judge." *Id*. (quoting *Univ. Books & Videos, Inc. v. Metro. Dade County*, 33 F. Supp. 2d 1364, 1374 (S.D. Fla. 1999); *see also BellSouth Telecomms., Inc. v. MCImetro Access Transmission Servs., LLC*, 425 F.3d 964, 971 (11th Cir. 2005) ("the amount of security required by the rule is a matter within the discretion of the trial court . . . [and] the court may elect to require no security at all").

Here, the Individual Defendants expressly agreed that if they breached their Agreements BSN would be entitled to injunctive relief without bond and without prejudice (Hinote),  *Id*., Ex. A, at ¶11, or a maximum bond of $1,000 (Fiorillo, Hall, and Fiaella). (Ex. B at ¶IV.1.; Ex. C at ¶IV.1; Ex. D at ¶IV.1.) Accordingly, BSN requests this Court issue a preliminary injunction with only a bond of $1,000.00, as agreed to by the Individual Defendants in their respective agreements.

WHEREFORE, based on the foregoing, BSN respectfully requests that this Court grant BSN's Motion, set an evidentiary hearing for 75 days from the date of filing, order expedited discovery as requested in BSN's separate Motion, set a reasonable schedule for the pre-hearing exchange of hearing exhibits and witnesses, and post-hearing submissions of proposed findings of fact and conclusions of law, enter a preliminary injunction against all Defendants on the

terms stated by BSN herein, and enter such other equitable and procedural relief deemed necessary to promptly resolve Plaintiff's request for a preliminary injunction.


DATED:        July 23, 2019

                              Respectfully submitted,

                              */s/ Kevin D. Zwetsch*
                              Kevin D. Zwetsch
                              Florida Bar No.: 0962260
                              E-mail: kevin.zwetsch@ogletree.com
                              Secondary email: elba.chinea@ogletree.com
                              OGLETREE, DEAKINS, NASH,
                               SMOAK & STEWART, P.C.
                              100 North Tampa Street, Suite 3600
                              Tampa, Florida  33602
                              Telephone: (813) 289-1247
                              Facsimile:  (813) 289-6530
                              *ATTORNEYS FOR PLAINTIFF*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on July 23, 2019 I electronically filed the foregoing with the Clerk of Court via CM/ECF.

I HEREBY CERTIFY that on July 23, 2019, a true and correct copy of the foregoing was sent VIA OVERNIGHT MAIL to:

Rhanda Hinote
3320 N. Ravello Drive
St. Augustine, FL 32092

Caren Fiorillo
220 W. Tarrington Drive
Deland, FL 32724

Keitha Hall
12503 Saint Charlotte Drive
Tampa, FL 33618

Rebecca Faiella
7407 Beach Walk Place
Jacksonville, FL 32256

Foot Locker, Inc.
c/o Registered Agent, CT Corporation System
1200 South Pine Island Road
Plantation, FL 33324

EastBay, Inc.
c/o Registered Agent, CT Corporation System
1200 South Pine Island Road
Plantation, FL 33324

With a copy to:

Robert Steiner
Kelly Drye & Warren LLP
101 Park Avenue
New York, NY  10178

*/s/ Kevin D. Zwetsch*
Attorney

39305717.2